UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUISA SMITH,

                              Plaintiff,

        -v-

CITY OF NEW YORK, *et al.*,

                              Defendants.

No. 15-cv-4493 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

       Plaintiff Louisa Smith, who is proceeding *pro se*, asserts claims for discrimination and

retaliation against the City of New York (the "City"), New York Presbyterian Hospital ("NYPH"),

and Weill-Cornell College of Cornell University, New York ("Weill-Cornell," and with NYPH,

the "Hospital Defendants") in connection with Plaintiff's involuntary hospitalization following an

anonymous call to the police indicating that she posed a danger to herself.  (Doc. No. 1.)  Now

before the Court are the motions of the City and the Hospital Defendants to dismiss Plaintiff's

complaint with prejudice.  For the reasons set forth below, both motions are granted.

I. BACKGROUND[1]

       Plaintiff alleges that on June 7, 2012, she was on a conference call "in connection with

legal claims" when police officers suddenly appeared at her door, placed her in handcuffs, and

took her against her will to NYPH, where she was checked into the Psychiatric Emergency

Department ("PED").  (Compl. ¶¶ 15, 39-40.)  Plaintiff alleges that this was the result of an

---

[1] The following facts are taken from the complaint, filed on June 8, 2015 (Doc. No. 1 ("Compl.")), and from the public docket of a prior case brought by Plaintiff, *Smith v. N.Y. Presbyterian Hosp.*, No. 05-cv-7729 (RJS) (SDNY), which is a matter of public record, *see Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).  In ruling on the motion, the Court has also considered the City's memorandum of law (Doc. No. 32), the Hospital Defendants' memorandum of law (Doc. No. 29), Plaintiff's multiple filings in opposition to Defendants' motions (Doc. Nos. 51, 52, 56, and 57), the City's reply (Doc. No. 65), the Hospital Defendants' reply (Doc. No. 58), and the exhibits attached to those filings .

unsubstantiated anonymous phone call to the police department, wherein the caller told police officers that Plaintiff was in danger of harming herself.  (*Id.* ¶ 44.)

Plaintiff admits that she has had "depressive conditions . . . twice in her life" that did disable her, but contends that she was not suffering from any mental illness or medical condition at the time she was taken into custody.  (*Id.* at 28.)  Specifically, Plaintiff says that she was "cogent" (*id.* ¶ 46) and that she attempted to explain to the officers that she was fine and did not require any medical attention or aid, but they refused to listen to her (*id.* at 30-31).

On the way to the hospital, Plaintiff complained of cardiological symptoms and tightness of the handcuffs, but was given no assistance.  (*Id.* ¶ 53.)  Once at the hospital, "[b]ased on the manner in which she arrived at the hospital and the allegations made by an anonymous caller," Plaintiff was subjected to the PED's mandatory disrobement policy, pursuant to which she was forced to remove her clothes, including her underwear, under the examination of a security officer. (*Id.* ¶ 57.)  Plaintiff claims that she was told to comply with this procedure in front of a male security officer, and that, when she refused, she was unnecessarily sedated with a drug that was contraindicated for individuals with cardiological conditions.  (*Id.* ¶¶ 58-63.)   She was then forcibly disrobed in a cubicle with windows by a female officer "with other staff crowding in." (*Id.* ¶ 61.)  Plaintiff complains that this disrobement policy is discriminatory against those with disabilities.  (*Id.* ¶ 98.)

Once admitted, Plaintiff continued to complain of cardiological symptoms, but was only given a single aspirin as treatment.  (*Id.* ¶¶ 64-65.)  No testing was performed to further investigate her condition.  (*Id.* ¶ 65.)  Plaintiff alleges that she was denied release from care and moved to a different location for retaliatory reasons, since the hospital staff were proponents of the disrobement policy and knew that Plaintiff was a lawyer (previously employed by the Department of Justice) who would challenge it in court.  (*Id.* ¶¶ 72-77, 104.)  She further claims that staff

"laugh[ed] about her complaints" and "teas[ed] her." (*Id.* ¶ 75.)  Plaintiff also states that she was "allowed to make a few phone calls but only overheard by security staff." (*Id.* ¶ 71.)  She was detained in the emergency room for approximately 36 to 38 hours (*id.* ¶ 66) and subsequently moved "elsewhere" (*id.* ¶ 75) to a "location near Defendant Hospital (just a block or so away from the emergency room of Defendant Hospital)" (*id.* ¶ 79).  Plaintiff claims that these acts were motivated by the facts that she objected to the disrobement policy and that she was viewed as a "litigation threat," due to her training as a lawyer. (*Id.*  ¶ 104.)  Plaintiff was discharged on June 10, 2012. (*Id.* ¶ 83.)

On June 8, 2015, Plaintiff filed her complaint in the Southern District of New York, alleging violations of her constitutional rights pursuant to 42 U.S.C. § 1983, discrimination under Titles II and III of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, retaliation under Title V of the ADA, violations of the New York State and City human rights laws, and violations of the New York state constitution against the City, the Hospital Defendants, various individuals including Jane and John Doe Defendants, and Dr. Sharon Hird, none of whom have been served.  Although the case was originally assigned to Judge Paul G. Gardephe and then to Judge Katherine C. Forrest, on October 22, 2015, the case was reassigned to my docket pursuant to Local Civil Rule 13 as related to a previous action filed by Plaintiff, which is discussed in more detail below.  On January 20, 2016, the City and the Hospital Defendants each filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff had failed to state a claim. (Doc. Nos. 37 and 31.)  The Hospital Defendants also moved to dismiss the complaint for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b) and argued that some of Plaintiff's claims are barred on *res judicata* grounds.  The motions were fully briefed as of April 20, 2016.

As relevant here, Plaintiff previously filed a similar complaint against NYPH, Weill-Cornell, and various individual doctors and nurses at the hospital.  (*See Smith v. N.Y. Presbyterian Hosp.*, No. 05-cv-7729 (RJS) (SDNY) ("*Smith I*").)  In that suit, Plaintiff likewise brought claims for discrimination under Section 504 of the Rehabilitation Act, discrimination under Title III of the ADA, retaliation under Title V of the ADA, violations of the New York State Human Rights Law, violations of the New York state constitution, and state law claims for medical malpractice, invasion of privacy, assault and battery, intentional and negligent infliction of emotional distress, and negligent hiring, training, supervision, and retention of employees, in connection with a series of forced hospitalizations between January 2002 and August 2009.  Notably, in *Smith I*, Plaintiff also alleged that the mandatory disrobement policy of the PED was discriminatory.

The case, which extended nearly a decade, was first assigned to then-Chief Judge Michael B. Mukasey, who dismissed the original complaint for failure to state a claim, a decision which was later vacated in part by the Second Circuit.  (*Smith I*, Doc. Nos. 1, 7.)  On remand, the case was reassigned to Judge P. Kevin Castel, at which time Plaintiff amended her complaint.  (*Id.* Doc. No. 10.)  On April 3, 2009, the case was once again reassigned, from Judge Castel to Judge Gerard E. Lynch, who referred the matter to Magistrate Judge Debra C. Freeman for discovery and general pre-trial supervision.  (Doc. No. 11.)  The case was reassigned to my docket on February 26, 2009, following Judge Lynch's elevation to the United States Court of Appeals for the Second Circuit. Nevertheless, from June 2008 to February 2013, Judge Freeman continued to oversee discovery, albeit with frequent interruptions and delays due to Plaintiff's numerous requests for adjournments.  (*See, e.g.*, *id.* Doc. Nos. 26, 41, 55, 99.)  Finally, on April 16, 2013, Defendants moved for summary judgment.  (*Id.* Doc. No. 202.)  On March 19, 2014, the Court granted Defendants' motion, which Plaintiff did not oppose, as to most of Plaintiff's claims, including her claim that the PED's disrobement policy was discriminatory.  (*Id.* Doc. No. 231.)  The Court concluded that

Plaintiff had not shown that the PED disrobement policy was discriminatory on the basis of a disability; rather, the Court found, the PED's disrobement policy constituted a medical treatment decision not actionable under the ADA.  (*Id.*)  On January 26, 2015, the Court dismissed the remaining causes of action with prejudice pursuant to Federal Rule of Civil Procedure 16(f) in light of Plaintiff's failure to prosecute her case and comply with judicial orders requiring pre-trial submissions.  (*Smith I*, Doc. No. 288.)  The Second Circuit affirmed the Court's dismissal on September 30, 2015, when it dismissed Plaintiff's appeal.  (*Smith I*, Doc. No. 290.)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").  To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *ATSI Commc'ns*, 493 F.3d at 98.  However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.

Although a court must generally construe the pleadings of a *pro se* litigant liberally, *see Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants."), a court is not obligated to do so where the *pro se* plaintiff is a licensed attorney, *see id.* at 101-02; *Truong v. Cuthbertson*, No. 15-cv-4268 (DLI) (LB), 2015 WL 4771852, at *1 (E.D.N.Y. Aug. 12, 2015) ("As Plaintiff is a former attorney, the Court is not obligated to read his pleadings liberally."); *Goel v. U.S. Dep't of Justice*, No. 03-cv-0579 (HB), 2003 WL 22047877, at *1 (S.D.N.Y. Aug. 29, 2003) (declining to construe pleadings liberally where *pro se* plaintiff was licensed attorney). Here, Plaintiff is an attorney with extensive legal training and experience and is thus not entitled to the special solicitude granted to *pro se* litigants. Nevertheless, in light of Plaintiff's medical and mental health conditions, the Court construes her pleadings with the degree of liberality typically given to *pro se* plaintiffs, although "[even] a *pro se* complaint must state a plausible claim for relief." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014).

## III. DISCUSSION

As an initial matter, the Court notes Plaintiff's continued refusal to comply with Court deadlines and her repeated late filings in this case. Even after the Court granted Plaintiff an extension of time in which to submit her responses to Defendants' motions to dismiss (Doc. Nos. 40 and 43), Plaintiff sought a further extension (Doc. No. 48), which the Court denied (Doc. No. 49). Plaintiff nonetheless decided to grant herself the extension denied by the Court and filed her responses three days after the already-extended deadline. (Doc. No. 51 and 52.) She then filed additional lengthy submissions with "errata pages" four days after that. (Doc. Nos. 56 and 57.) Despite Plaintiff's repeated late filings in clear violation of Court orders, the Court has considered all of Plaintiff's submissions, including those filed after deadlines, in resolving these motions. For

the reasons set forth below, the Court concludes that Plaintiff's complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## A. *Monell* Liability of the City

Plaintiff's complaint may be construed to bring several claims against the City, including a claim arising under 28 U.S.C. § 1983, as well as a claim for discrimination, which the Court addresses later in this opinion.   As to the Section 1983 claim, although Plaintiff does not specifically cite that statute, Plaintiff's complaint refers to "federal Constitutional claims under the First and Fourteenth Amendments" (Compl. ¶ 90), and identifies "errors in training or otherwise" (*id.* ¶ 91).   Plaintiff also cites "improper policies and practices of the City of New York and its urgent response departments (specifically, calls or statements made by anonymous persons concerning other persons with alleged emergency conditions)," and she alleges that "[p]olice officers may it appears also need more training on *when they do and do not have a reasonable concern about personal liability*"   (*Id.* at 34 (emphasis in original)).   The Court construes these allegations as raising a Section 1983 *Monell* claim against the City.[3]

Section 1983 provides a civil cause of action for damages against any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the

---

[2] As noted above, the Hospital Defendants also ask the Court to dismiss Plaintiff's complaint for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).   Dismissal with prejudice for lack of prosecution is "'a harsh remedy to be utilized only in extreme situations.'" *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (quoting *Theilman v. Rutland Hosp., Inc.*, 455 F.2d 853, 855 (2d Cir. 1972)).   Here, Plaintiff has failed to comply with a number of Court orders, including several scheduling orders in late October and November 2015 (*see* Doc. Nos. 20 and 23), and filed her untimely responses to the motions to dismiss.   In light of the facts that these delays have occurred over a relatively short span of time, that Plaintiff has prosecuted her case by appearing for the December 23, 2015 initial and pre-motion conference (*see* Minute Entry, dated December 23, 2015), and that she has filed responses to Defendants' motions to dismiss, the Court declines to grant the "drastic remedy" of dismissal pursuant to Rule 41(b).   *Carter v. Jablonsky*, 121 F. App'x 888, 889 (2d Cir. 2005).

[3] Plaintiff's complaint also seems to raise several Section 1983 claims against the individual officers involved in her forced hospitalization, including excessive force and false arrest claims.   Specifically, she states that "[t]o the extent police officers involved acted outside their received training Ms. Smith reserves claims of improper use of force and restraint and false imprisonment and constitutional and human rights violations."   (Compl. ¶ 14.)   However, as discussed in more detail below with respect to Plaintiff's request for leave to amend (*see* Section III.F.), no individual officers have been named or served, and any claims against the individual officers are time-barred.

Constitution or laws of the United States.  *See* 42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Duamutef v. Morris*, 956 F. Supp. 1112, 1115 (S.D.N.Y. 1997) (citing *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).  To prevail on a claim under Section 1983, a plaintiff must demonstrate (1) the deprivation of any right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law.  *See id.*  "In order to establish a § 1983 claim . . . , a plaintiff must also show that the defendants were *personally* involved in the unconstitutional conduct." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (emphasis added); *see also Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (finding a complaint to be facially defective when the plaintiff failed to allege that "defendants were directly and personally responsible for the purported unlawful conduct").

To recover on a Section 1983 claim against a municipality or municipal agency, a plaintiff must allege that the deprivation of his rights was caused by the execution of an official policy, custom, or practice.  *See Monell v. City of N.Y. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Reynolds v. Giuliani*, 506 F.3d 183, 190-91 (2d Cir. 2007);  *Ezagui v. City of New York*, 726 F. Supp. 2d 275, 284 (S.D.N.Y. 2010) (explaining that for municipality to be held liable for constitutional violation under Section 1983, plaintiff must prove that: "(1) an official policy or custom . . . (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right" (alteration in original) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995))).  An official policy or custom can be demonstrated in a number of ways.  First, such a policy can be shown where the agency "promulgates an official policy," or "a municipal employee with final policymaking authority" undertakes an unconstitutional act. *Warheit v. City of New York*, No. 02-cv-7345 (PAC), 2006 WL 2381871, at *12 (S.D.RY. Aug. 15, 2006); *accord Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).  Second, a custom or practice may be demonstrated based

on a pattern of misconduct that is "sufficiently persistent or widespread" as to constitute a custom of which a supervising policy-maker must have been aware. *Reynolds*, 506 F.3d at 192. Third, an official policy can be established by a municipality's failure to adequately train or supervise its agents or employees. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127-28 & n.8 (2d Cir. 2004). Finally, a plaintiff can state a *Monell* claim where he or she demonstrates that the municipality repeatedly failed to discipline employees or agents who violate civil rights because "the persistent failure to discipline [can] give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

However, it is well established that "the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012) (quoting *Zahra*, 48 F.3d at 685). Moreover, "[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Id.* Here, Plaintiff pleads no facts that could support a finding of an official city policy or custom. Although Plaintiff does not focus on one particular policy, she appears to allege that the City has unconstitutional policies in responding to anonymous phone calls (Compl. at 3) and failing to properly train officers to respond to 911 calls (*id.* at 34). Specifically, Plaintiff refers broadly to "improper policies and practices of the City of New York and its urgent response departments (specifically, calls or statements made by anonymous persons concerning other persons with alleged emergency conditions)," and she alleges that "[p]olice officers may it appears also need more training on *when they do and do not have a reasonable concern about personal liability*" (*id.* at 34 (emphasis in original)). These conclusory and vague assertions are insufficient to state a *Monell* claim against the City as they

include no "allegations of fact tending to support, at least circumstantially" an inference of an official policy or custom. *Ulysses I & Co. v. Peer Morton*, 11 F. App'x 14, 16 (2d Cir. 2001). Indeed, the only facts on which Plaintiff rests her claims of unconstitutional policies appear to be the incident at the center of this complaint. In addition, Plaintiff makes no assertion that a policymaker was involved in that incident. *See id.* The Court thus finds that Plaintiff's conclusory statements are insufficient to allege an official city policy or custom. Accordingly, the Court grants the City's motion to dismiss Plaintiff's *Monell* claim.

### B. Plaintiff's Discrimination Claims

#### 1. The Hospital Defendants

With respect to the Hospital Defendants, Plaintiff brings claims of discrimination under both Title III of the ADA and Section 504 of the Rehabilitation Act based on the PED's mandatory disrobement policy, which requires that patients in the PED remove their clothes on arrival. Specifically, Plaintiff alleges that the PED's disrobement policy is a "practice that amounts to a 'strip search' procedure (as that procedure is defined by law) applied for unwarranted stereotypes and assumptions about persons alleged to have a psychiatric disabling condition." (Compl. ¶ 98.) Plaintiff's claims of discrimination fail for two reasons, which the Court addresses in turn.

#### a. *Res Judicata*

As stated above, this is not the first time that Plaintiff has filed a suit based on the PED's mandatory disrobement policy, and since the Court previously ruled against Plaintiff on the very same claims in *Smith I*, Plaintiff's claim of discrimination against the Hospital Defendants is barred by the doctrine of *res judicata*.

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (brackets omitted). To

prove that a claim is precluded under this doctrine, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 285 (2d Cir. 2000). Whether a claim that was not raised in the previous action could have been raised "depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997) (brackets omitted).  The doctrine of *res judicata* is designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Envtl. Def. v. U.S. E.P.A.*, 369 F.3d 193, 202 (2d Cir. 2004) (quoting *Allen*, 449 U.S. at 94).

Here, there is no question that *Smith I* – which involved Plaintiff and the same Hospital Defendants as this action – constituted an adjudication on the merits.  The Court dismissed the complaint in *Smith I* pursuant to Federal Rules of Civil Procedure 56 and 16(f) after giving Plaintiff a full and fair opportunity to litigate her case.  Almost all of Plaintiff's claims were dismissed on summary judgment pursuant to Rule 56.  (*Smith I*, Doc. No. 231.)  Indeed, with respect to the disrobement policy, the Court found that Plaintiff had not shown it was discriminatory on the basis of a disability and that it was a non-actionable medical treatment decision.  (*Id.*)  Although Plaintiff did not oppose Defendants' motion for summary judgment, she was given numerous opportunities to do so.  Plaintiff's remaining claims were dismissed pursuant to Federal Rule of Civil Procedure 16(f) after Plaintiff failed to file a number of pre-trial submissions despite multiple extensions. (*Smith I*, Doc. No. 290.)  Each of these decisions constituted a decision on the merits, which, together, resolved Plaintiff's entire case in favor of Defendants.  *See Nemaizer v. Baker*, 793 F.2d 58, 60-61 (2d Cir. 1986) ("A dismissal with prejudice has the effect of a final adjudication on the

merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action. . . . Such a dismissal constitutes a final judgment with the preclusive effect of *res judicata* not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." (internal quotation marks omitted)). Accordingly, the Court has little difficulty concluding that *Smith I* was an adjudication on the merits involving the same parties in which Plaintiff and Defendants each had a full opportunity to litigate.

The only remaining question then is whether the issue raised in this complaint with respect to the mandatory disrobement policy is the same issue already litigated in *Smith I.* The Court finds that it is. In fact, Plaintiff's claim of discrimination in this case is almost identical to her previous one with only difference being the time at which the alleged disrobement took place. In *Smith I*, Plaintiff alleged that the mandatory disrobement policy was "discriminatory . . . based on stereotypes and overgeneralizations about mental illness." (*Smith I*, Doc. No. 10 ¶ 67.) In the current action, Plaintiff states that the disrobement policy is "applied for unwarranted stereotypes and assumptions about persons alleged to have a psychiatric disabling condition" (Compl. ¶ 98) and that it "rests on assumptions that are unwarranted stereotypes about persons with psychiatric disabilities" (*id.* ¶ 99). Although the conduct in *Smith I* dates from a different time period – the hospital visits at issue in that case occurred between 2002 and 2009, whereas the incident here took place in 2012 – Plaintiff's complaint does not allege that the disrobement policy was any different at the time of *Smith I* than it was in 2012. Plaintiff now attempts in her briefing to argue that the policy is in fact different by stating conclusorily that Defendants "produced policies and admissions concerning policies VERY different than the one they CLAIM is extant in their brief at this time or as of June 7, 2012" (Doc. No. 51 at 23), but she does not identify any actual differences in the policies. In fact, some of the evidence presented in *Smith I* actually postdates

the incident at issue in this case and confirms that the same policy was in place in 2012.[4] Specifically, the affidavits of Dr. Jack Barchas, dated April 12, 2013, and Lisa Sombrotto, dated April 15, 2013, describe the mandatory disrobement policy in the present tense indicating that the policy in effect when the Court first considered it in *Smith I* is the same policy that was in effect during the June 7, 2012 incident at the center of this most recent complaint.  (*Smith I*, Doc. No. 206, Declaration of Elizabeth Cornacchio, dated April 15, 2013, Exs. F and G.)  Because Plaintiff has alleged no facts demonstrating any difference in the mandatory disrobement policy, and the evidence in *Smith I* supports a finding that the same policy was in effect in 2012, the Court concludes that the disrobement policy in this complaint is the same policy already addressed in *Smith I*, and thus that this case involves the same issue resolved in *Smith I* for purposes of *res judicata*.[5]  *See Monahan*, 214 F.3d at 289 ("Plaintiffs' assertion of new incidents arising from the application of the challenged policy is . . . insufficient to bar the application of *res judicata*."); *see also Interoceanica Corp.*, 107 F.3d at 91 ("[Transaction] must be given a flexible, common-sense construction that recognizes the reality of the situation."); *N.L.R.B. v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983) ("Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.").  Accordingly, the Court finds that Plaintiff's discrimination claim about the mandatory disrobement policy must be dismissed on *res judicata* grounds.

---

[4] As noted above, the Court takes judicial notice of the record in *Smith I*, including the undisputed evidence submitted by the defendants in connection with their motion for summary judgment.  *See Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) ("Generally *res judicata* is an affirmative defense to be pleaded in the defendant's answer.  However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer.").

[5] Indeed, even if the disrobement policy had been slightly modified between *Smith I* and the present action, Plaintiff's claims might still be subject to *res judicata*.  *See Monahan*, 214 F.3d at 289 ("There is ample precedent to show that mere modification of a challenged policy will not alone undo the preclusive effect of a former judgment.").

b.  Failure to State a Claim

Even if Plaintiff's discrimination claims were not barred by the doctrine of *res judicata*, she has failed to state a claim that the mandatory disrobement policy is discriminatory under either Title III of the ADA, which applies to public accommodations like hospitals, or Section 504 of the Rehabilitation Act.  The ADA generally prohibits "discrimination against an individual 'on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases . . . or operates a place of public accommodation.'"  *Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (quoting 42 U.S.C. § 12182(a)).  Similarly, Section 504 of the Rehabilitation Act, which applies to programs and entities that receive federal government funding, provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  The elements of a discrimination claim are substantially identical under both statutes.  *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009); *see also Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004).  Thus, in order to prevail under either statute, a plaintiff must establish:  "(1) that she is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disabilit[y].'"  *Id.* (citation and quotation marks omitted) (alterations in original).  A plaintiff may establish the last prong under three possible theories: "disparate treatment, disparate impact, and failure to make reasonable accommodation."  *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002).

14

The Court already considered Plaintiff's allegations relating to any discrimination resulting from the PED's mandatory disrobement policy in its summary judgement decision in *Smith I*, and the analysis from that decision applies here as well, since Plaintiff includes no facts that might distinguish that case from this one.  (*See Smith I*, Doc. No. 231.)   Based on the allegations in her complaint, even if one accepts that Plaintiff is a "qualified individual" and that the Hospital Defendants are subject to the ADA and the Rehabilitation Act, Plaintiff simply has not pled sufficient facts to show that she was discriminated against because of her disability, since the mandatory disrobement policy is applied to *all* patients entering the hospital for a psychiatric emergency.

The Second Circuit's decision in *McGugan v. Aldana-Bernier*, which affirmed a district court's dismissal of a complaint on a Rule 12(b)(6) motion, is instructive on this point.  752 F.3d 224 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1703 (2015).   In *McGugan*, the Second Circuit found that a plaintiff's allegations that she was discriminated against based on her mental health were insufficient to state a claim.  *Id.* at 234.  Specifically, the plaintiff in that case objected to her involuntary confinement to a hospital after she was disruptive on an airplane.  *Id.* at 227.  The plaintiff accused the defendant hospital of "stereotyping persons who suffer from mental illness, rather than making a medically appropriate, individualized assessment."  *Id.* at 231.  The Second Circuit concluded that "a plaintiff pleads an actionable claim of discrimination in the medical treatment context under the ADA or the Rehabilitation Act if she alleges that the defendants made treatment decisions based on factors that are 'unrelated to, and thus improper to consideration of the inquiry in question,'" which in that case, as in this one, was  "the likelihood that [the plaintiff] posed a danger to herself or others."  *Id.* at 234.  Because the plaintiff had not alleged any discriminatory conduct that was not related to her psychiatric condition at the time, the Circuit affirmed the district court's dismissal of the complaint.  *Id.*; *see also United States v. Univ. Hosp.*,

*State Univ. of N.Y. at Stony Brook*, 729 F.2d 144, 157 (2d Cir. 1984) ("Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say with certainty that a particular decision was 'discriminatory.'"); *cf. Doe v. Pfrommer*, 148 F.3d 73, 84 (2d Cir. 1998) (affirming dismissal on summary judgment where no allegation of "illegal discrimination against the disabled").

The same reasoning applies here.  Plaintiff's own characterization of the disrobement policy appears to concede that the policy is related to a person's psychiatric condition at the time he or she enters the hospital.  Indeed, she describes the policy as:

> requiring of patients brought in over their objection for any evaluation in any emergency room if identified as a "psychiatric" case as plaintiff was in this incident, but not if the identification of the patient leaves out any allegation of past or current psychiatric disability, and which discrimination (based on alleged, perceived, actual, or known or alleged historical psychiatric disability) includes a practice that amounts to a "strip search" procedure. . . .

(Compl. ¶ 98.)  As her own words thus reflect, Plaintiff does not allege that she was treated any differently than non-disabled patients who are brought in for psychiatric emergencies.  *See Pfrommer*, 148 F.3d at 82 (noting that the plaintiff's "discrimination claims do not draw their substance from any allegedly discriminatory animus against the disabled").  Indeed, she acknowledges that the disrobement policy applies to every individual "identified as a 'psychiatric case'" (*id.* ¶ 98) and that she was subjected to the policy "[b]ased on the manner in which she arrived at the hospital and the allegations made by the anonymous caller" (*id.* ¶ 57), who had told officers that Plaintiff was at "risk of harming herself" (*id.* ¶ 44).  While Plaintiff seems to suggest that she was entitled to a personal evaluation by medical staff before the disrobement policy could be applied (*see id.* ¶ 98), *McGugan* clearly recognizes, and common sense confirms, that such an individualized assessment is not required if the treatment is related to a person's perceived danger to themselves or others when admitted for psychiatric care.  752 F.3d at 234.

Put simply, Plaintiff's allegations include no mention of any discriminatory intent or improper consideration of Plaintiff's disability.  Rather, the allegations implicitly acknowledge that the disrobement policy is based on a judgment about the appropriate medical response to an apparent psychiatric emergency and is appropriately tailored to the difficult and potentially dangerous conditions associated with the care of patients in the PED.  As Plaintiff has pled no facts that might demonstrate that she was treated any differently than other PED patients on account of improper considerations relating to her disability, her claim for discrimination must fail.  *See, e.g.*, *Maccharulo v. N.Y. State Dep't of Corr. Servs.*, No. 08-cv-301 (LTS), 2010 WL 2899751, at *4 (S.D.N.Y. July 21, 2010) (dismissing complaint because "[p]laintiffs do not plead facts demonstrating that Decedent was treated differently from non-disabled individuals exhibiting the same behavior"); *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003) (dismissing complaint where plaintiffs did not "allege that violent and self-destructive inmates who are disabled due to mental illness are treated any differently than violent, self-destructive inmates who are not disabled due to mental illness"); *Aiken v. Nixon*, 236 F. Supp. 2d 211, 226 (N.D.N.Y. 2002) ("By plaintiffs' allegations, subjugation to the reaches of the policy arises as a condition of entry as a patient into the facility, not from considerations of a person's status as being disabled or not."), *aff'd*, 80 F. App'x 146 (2d Cir. 2003).

In sum, Plaintiff's complaint fails to state a claim for discrimination because she does not allege that the PED's mandatory disrobement policy – which applies to any and all patients entering the hospital for a psychiatric emergency – results in any disparate treatment or impact on account of a person's disability.  As *McGugan* recognizes, treatment based on a perception that a person poses a danger to themselves or others simply does not violate the ADA.  752 F.3d at 234.

Accordingly, Plaintiff's claims under the ADA and the Rehabilitation Act against the Hospital Defendants must be dismissed for failure to state a claim.[6]

### 2. Defendant City of New York

Plaintiff also appears to assert a claim of discrimination against the City, although the complaint is unclear as to her theory of liability in this regard.  In her complaint, Plaintiff states that "[t]his is an action under the Federal and State (New York) Constitutions, federal civil rights statutes (Americans with Disabilities Act and Rehabilitation Act[)] – both those that require accommodations in law enforcement and other activities by the city and in health care."  (Compl. ¶ 89).  A few pages later, she also references "the deprivation of liberty and equal protection of law on account of alleged disability and emergency without sufficient cause . . . resulting in removal of persons with and without disabilities alike."  (*Id.* ¶ 97.)  Construing Plaintiff's complaint liberally, the Court interprets these statements to raise a discrimination claim against the City.

Title II of the ADA, which applies to state and local governments, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  In evaluating a claim

---

[6] To the extent Plaintiff's complaint may be construed to raise a claim of discrimination under a theory of reasonable accommodation, this claim also fails. The ADA requires covered entities to provide reasonable accommodations to a disabled individual "whenever doing so would provide that individual with an opportunity to participate in, make use of, or derive a benefit from a program, facility, or service that would otherwise not be equally accessible to disabled and non-disabled individuals." *Andersen v. N. Shore Long Island Jewish Healthcare Sys.'s Zucker Hillside Hosp.*, No. 12-cv-1049 (JFB) (ETB), 2013 WL 784391, at *10 (E.D.N.Y. Jan. 23, 2013); *see* 42 U.S.C. § 12182(b)(2)(A)(ii)–(iii).  Smith alleges only that she was subjected to the PED policies "without accommodation or waiver ever permitted."  (Compl. ¶ 96.)  Such a conclusory statement is obviously insufficient to state a claim for a failure to provide reasonable accommodation.  *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").  Because Plaintiff includes no facts to demonstrate how she participated in services or received benefits differently because of her mental illness, she has failed to state a claim for discrimination under a theory of reasonable accommodation.

brought under Title II of the ADA, the Court considers the same factors cited above in the Title III analysis. *See Disabled in Action v. Bd. of Elections*, 752 F.3d 189, 196 (2d Cir. 2014).

Plaintiff has simply not alleged any facts that would support a claim of discrimination against the City under either the ADA or the Rehabilitation Act. Plaintiff's conclusory statements about the "deprivation of liberty and equal protection of law on account of alleged disability and emergency without sufficient cause . . . resulting in removal of persons with and without disabilities alike" (Compl. ¶ 97) and the fact that the ADA and Rehabilitation Act "require accommodations in law enforcement and other activities by the city" (*id.* ¶ 89) are obviously insufficient to state a claim for discrimination against the City. *See Hedges v. Town of Madison*, 456 F. App'x 22, 24 (2d Cir. Jan. 13, 2012) (affirming dismissal of complaint because even under "the most minimal of notice pleading standards" the plaintiff had not alleged "a single fact in support of his claims of discriminatory treatment which might conceivably give notice of the basis of his claims to the defendants"); *Samuel v. Bellevue Hosp. Ctr.*, 366 F. App'x 206, 207 (2d Cir. Feb 17, 2010) (affirming dismissal where the plaintiff "failed to allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class"). Put simply, throughout her complaint, Plaintiff's factual allegations of discrimination focus almost entirely on the mandatory disrobement policy, which is a hospital policy, not a City policy, and any claim of discrimination she alleges against the City is stated in vague and conclusory terms, which are insufficient to survive a motion to dismiss. In light of the fact that Plaintiff does not allege any facts to suggest that the City discriminated against her or denied her any opportunity or benefit, Plaintiff's claim of discrimination against the City must be dismissed.

C.  Retaliation

The ADA also "prohibits, *inter alia*, retaliation against any individual who has asserted rights under the ADA."  *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999).  Under the ADA's retaliation provision in Title V, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  A plaintiff states an ADA retaliation claim if she establishes that: "(i) [she] was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  *Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d Cir. 2002) (internal quotation marks omitted).  The same standards apply to a claim of retaliation under Section 504 of the Rehabilitation Act.  *See Aiken*, 236 F. Supp. 2d at 225.

Generally, informal complaints and threats to take legal action qualify as protected activities.  *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) (citing cases).  Simply put, an adverse action is one that "well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination."  *Warren v. Goord*, No. 06-3349-PR, 2008 WL 5077004, at *2 (2d Cir. Nov. 26, 2008) (citations and quotation marks omitted) (alteration in original).  Nevertheless, to adequately plead a causal connection, the "allegations must be sufficient to support the inference that the [protected activity] played a substantial part in the adverse action."  *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003) (internal quotation marks omitted).  However, "the plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent.  It is sufficient to allege facts which could reasonably support an inference to that effect."  *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 418 (2d Cir. 1999).  Causation can be proven either:

"(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

With respect to the Hospital Defendants, Plaintiff asserts that she was "retaliated against for her objection and litigation threat (and perceived strength of her assessment as a known former civil rights lawyer in the U.S. Justice Department lawyer with knowledge of applicable laws) to their policy of requiring her to remove all her garments."  (Compl. ¶ 104.)  She also alleges that "Dr. [Sharon] Hird is one of the architects [and] chief proponents of the mandatory stripsearch policy and practice Ms. Smith claims is illegal under federal law and had told Dr. Hird and others at Defendant hospital, including risk management and legal personnel who were well aware of her background as a Justice Department lawyer."  (*Id.*  ¶ 73.)  The Court construes these statements as alleging two protected activities that might provide a basis for a claim of retaliation:  (1) Plaintiff's "objection" at the hospital to the mandatory disrobement policy, and (2) her prior litigation challenging the disrobement policy.  The Court finds that, under either theory, Plaintiff has failed to state a claim for retaliation.

To the extent that Plaintiff bases her claim of retaliation on her objection to the disrobement policy, such an allegation is insufficient to allege a protected activity because Plaintiff simply cannot establish that she possessed a "good faith, reasonable belief that the underlying challenged actions of the [defendant] violated the law."  *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998);  *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination.").  The Second Circuit has stated that the objective reasonableness of a person's

belief "must 'be measured against existing substantive law,' because a failure to do so would 'eviscerate the objective component of our reasonableness inquiry.'"  *Sosa v. Local Staff, LLC*, 618 F. App'x 19, 19-20 (2d Cir. 2015) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)).   Here, Plaintiff cannot allege that she had a reasonable belief that the mandatory disrobement policy – which, again, was applied to everyone in the PED regardless of any disability based on a medical concern that psychiatric patients might pose a danger to themselves or others – violated the ADA.  *See Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 135-36 (2d Cir. 1999) (a plaintiff "could not have reasonably believed that he was opposing" a discriminatory employment practice where there was no evidence of discrimination in the employment practice); *see also Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988) (holding that plaintiff could not have held a reasonable belief where "objections neither pointed out discrimination against particular individuals nor discriminatory practices by [the employer]").  As discussed above, Plaintiff's own complaint fails to allege that the policy is applied in a discriminatory fashion based on a disability.  Rather, her allegations implicitly acknowledge that the policy reflects a medical concern for a patient's psychiatric condition.  Although Plaintiff asserts that the policy was overboard and that she was entitled to a personal evaluation by doctors *before* she was compelled to disrobe, that position is simply untenable for the reasons discussed above. As such, the Court finds that Plaintiff's objection to being subjected to the disrobement policy does not constitute a protected activity because Plaintiff cannot show an objectively reasonable basis for believing that the policy violates the ADA.

Moreover, to the extent Plaintiff's retaliation claim is based on her prior litigation against the Hospital Defendants, Plaintiff's claim fails for the additional reason that Plaintiff does not explain how her treating doctors would have even been aware of her prior litigation involving the

mandatory disrobement policy.  As pled, the complaint merely alleges that Dr. Hird and others were aware that Plaintiff was a lawyer, and therefore posed a litigation risk, not that she had previously sued the hospital with regard to its disrobement policy.  As such, Plaintiff's allegations do not support an inference that the medical staff on duty even knew about the prior litigation, much less that the litigation was the *cause* of the alleged adverse actions.  In short, Plaintiff has failed to plead facts from which the Court could infer a retaliatory animus or that might support a finding of a causal relationship between the alleged adverse action and her prior litigation.

Finally, Plaintiff has not alleged any adverse actions that would be sufficient to state a claim of retaliation.  "Actions are materially adverse if they are harmful to the point that they could well dissuade a reasonable [person] from making or supporting a charge of discrimination [or retaliation]." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010).  Here, Plaintiff states that hospital officials took adverse actions against her because they sent her to a different facility rather than to a "bed in the hospital or its associated Westchester campus" (Compl. 74-75), kept her under care for a longer period than otherwise necessary (*id.* ¶¶ 66, 74), and "laugh[ed] about her complaints . . . and teas[ed] her" (*id.* ¶ 75).  As an initial matter, Plaintiff's complaints of teasing and laughing are insufficient to state a claim of retaliation because these actions are "unpleasant matters that do not rise to the level of adverse . . . actions." *Ramsey v. N.Y.C. Health & Hosps. Corp.*, No. 98-cv-1594 (RPP), 2000 WL 713045, at *12 (S.D.N.Y. June 2, 2000) (brackets and internal quotation marks omitted); *see also Laudadio v. Johanns*, 677 F. Supp. 2d 590, 613 (E.D.N.Y. 2010) ("'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' may be insufficient to establish a materially adverse action." (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)).

As to Plaintiff's complaints that she was kept under care longer than necessary and transferred to a different facility, the Court finds that these are precisely the type of decisions

23

involving medical judgment that are not actionable under the ADA.  It is well established that complaints about medical treatment are generally insufficient to state a claim under the ADA.  *See United States v. Univ. Hosp.*, 729 F.2d 144, 156-60 (2d Cir. 1984); *see also Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab[ilitation] Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions.") (citing cases). Here, the Court simply will not second-guess a hospital's decision to keep a patient under care because of Plaintiff's vague allegation that that decision was retaliatory.  Indeed, while courts have allowed claims of retaliation to proceed based on allegations of the *denial* of medical care, *see, e.g.*, *Liner v. Fischer*, No. 11-cv-6711 (PAC) (JLC), 2013 WL 3168660, at *15 (S.D.N.Y. June 24, 2013) (citing *Burton v. Lynch*, 664 F.Supp.2d 349, 367 (S.D.N.Y. 2009)), *adopted*, 2013 WL 4405539 (S.D.N.Y. Aug. 7, 2013), the Court is  not aware of any case in which a plaintiff has brought a claim for retaliation against a hospital based on a plaintiff's disagreement with the decisions made by the hospital about the patient's care.  In addition, Plaintiff's own complaint states that the facility to which Plaintiff was transferred was "not bad to her" (*id.* ¶ 84), and she implicitly acknowledges that the medical care she received was related to her condition because her blood tests were "abnormal" and "consistent with muscle damage"  (*id.* ¶¶ 80, 82).  Because actions based on medical judgments are not actionable under the ADA, Plaintiff has failed to allege an adverse action that could support her claim of retaliation.

Accordingly, the Court concludes that Plaintiff has failed to state a claim against the Hospital Defendants for retaliation under the ADA.[7]

---

[7] Plaintiff does not appear to state a claim for retaliation against the City.  Specifically, Plaintiff has not alleged any facts, nor does she even include any conclusory assertion, that might support a claim that the City took any adverse action against her in retaliation for protected activity.  As such, the Court concludes that Plaintiff has not stated a claim for retaliation against the City.

D.  State Law Claims

Having dismissed Plaintiff's federal claims in this case, the Court declines to exercise supplemental jurisdiction over any potential state law claims alleged in the complaint, including any claims brought under New York State and City human rights laws or any alleged violations of the New York state constitution, and thus dismisses those claims as well.  *See* 28 U.S.C. § 1367(c)(3) ("[A] district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well."); *Prado v. City of New York*, No. 12-cv-4239 (RJS), 2015 WL 5190427, at *6 (S.D.N.Y. Sept. 3, 2015) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of [relevant] factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))).

E.  Dr. Sharon Hird

Plaintiff's complaint also names Dr. Sharon Hird, one of the doctors who treated her at the hospital, as a Defendant.  (Doc. No. 1.)  More than a year has passed since Plaintiff initiated this action and Plaintiff has failed to file an affidavit of service with the Court attesting to service of the summons and complaint on Dr. Hird.  Accordingly, Plaintiff's claims against Dr. Hird would ordinarily be subject to dismissal without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

However, the Court concludes that Plaintiff's claims against Dr. Hird must be dismissed with prejudice because, for the reasons discussed above, Plaintiff has failed to state a claim for discrimination or retaliation.  In addition, Plaintiff's claim of discrimination is barred by collateral

estoppel.  Although Dr. Hird was not a defendant in the prior action, and thus, claims against her are not barred by *res judicata*, the related doctrine of collateral estoppel provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  Normally, collateral estoppel "will bar the relitigation of an issue of law or fact that was raised, litigated, and actually decided by a judgment in a prior proceeding between the parties," as long as "the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim." *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983).  However, the doctrine of non-mutual defensive collateral estoppel also "precludes a plaintiff from relitigating identical issues by merely switching adversaries." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (internal quotation marks omitted).

As discussed above, this litigation involves the same mandatory disrobement policy that was already extensively litigated in *Smith I*.  As a result, the issue in that litigation – whether the mandatory disrobement policy is discriminatory – is identical to the discrimination claim that Plaintiff raises here.  Although Dr. Hird was not a defendant in *Smith I*, Plaintiff has not stated any facts relating to Dr. Hird that might warrant a separate analysis or lead to a different result than in *Smith I*.  The doctrine of non-mutual defensive collateral estoppel is designed to prevent precisely this type of attempt to relitigate an issue by "merely switching adversaries." *Parklane*, 439 U.S. at 329; *see also Jasper v. Sony Music Entm't, Inc.*, 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary.").  As such, in addition to the fact that Plaintiff's claims against Dr. Hird must be

dismissed under Rule 12(b)(6) for failure to state a claim, Plaintiff's suit against Dr. Hird is also barred by the doctrine of collateral estoppel.

### F. Leave to Amend

Plaintiff has previously sought leave to amend her complaint in order to add individual officers based on a *Valentin* order issued by Judge Forrest in October 2015 (Doc. No. 3). (*See* Doc. No. 14.) In her response to the City's motion to dismiss, Plaintiff also now seeks leave to amend her complaint to add a separate incident from January 2016 when Plaintiff alleges that she was put into an ambulance based on an anonymous call. (Doc. No. 52.)

Federal Rule of Civil Procedure 15(a)(2) permits a party to amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Generally "[t]he court should freely give leave when justice so requires," *id.*, but there are times when granting such leave may be inappropriate, *see Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998) ("[A] motion to amend should be denied if there is an apparent or declared reason – such as undue delay, bad faith or dilatory motive[], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment." (citation and internal quotation marks omitted)). And "[w]hile pleading is not a game of skill in which one misstep may be decisive to the outcome, neither is it an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, No. 06-cv-643 (GEL), 2008 WL 4962985, at *2 (S.D.N.Y. Nov. 20, 2008) (internal quotation marks omitted).

With respect to the *Valentin* order, the Court finds that any amendment to add the names of individual officers would be futile because claims against them would be time barred. On October 5, 2015, Judge Forrest issued a *Valentin* order for the City to provide the names of

individual officers so that Plaintiff might add them to her complaint.  (Doc. No. 3.)  On March 25, 2016, after the case was reassigned to my docket, the Court stayed compliance with the *Valentin* order until the resolution of the motions to dismiss.  (Doc. No. 46.)  However, it should be noted that Plaintiff filed this action on the very day the statute of limitations on her Section 1983 claims ran – three years after the June 7, 2012 incident.  *See Espada v. Schneider*, 522 F. Supp. 2d 544, 550 (S.D.N.Y. 2007) ("New York law supplies the applicable statute of limitations periods – three years for § 1983 claims . . . ." (citing *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir.1994))); *see also Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005) ("Under New York law, the statute of limitations for § 1983 claims premised on torts such as false arrest or false imprisonment is three years.").  Any amendment to include individual officers at this point – or at any time after Plaintiff first filed her complaint – would thus be futile because claims against the individual officers were time-barred well before Judge Forrest issued the *Valentin* order on October 5, 2015 and do not relate back to Plaintiff's filing of the original complaint.  *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("Generally, 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued."); *see also Vasconcellos v. City of New York*, No. 12-cv-8445 (CM), 2014 WL 4961441, at *6 (S.D.N.Y. Oct. 2, 2014) (holding that a plaintiff's "failure [to name individual defendants] cannot be characterized as a mistake, so her amended complaint does not relate back to her original complaint and is time-barred" (internal quotation marks omitted)).  Accordingly, the Court vacates the earlier *Valentin* order and denies Plaintiff leave to amend her complaint to name individual officers.

Plaintiff also asks for leave to amend the complaint to add an incident that she alleges took place in January 2016.  Although she does not offer much detail about the incident, she essentially alleges that she was "removed from a public plaza" and put into an ambulance because of the cold

weather and an anonymous phone call which stated that she was "allegedly suicidal."  (Doc. No. 52 at 19.)  Plaintiff does not state, nor does she even suggest, that this incident involved any of the same officers as the incident underlying this complaint.

The Court finds that amending the complaint to add this incident would be futile.  Plaintiff includes no explanation as to how this incident involved any discrimination or retaliation, nor how it is related to the incident underlying the complaint.  Indeed, she once again appears to concede that the hospitalization in that incident was due to concerns for her mental and physical health – and not improper discriminatory motives – and she does not indicate that she was retaliated against in any way.  In addition, Plaintiff provides no facts as to how this second incident might demonstrate any unconstitutional official policy to bolster her *Monell* claim.  As such, the Court finds that allowing Plaintiff to amend her complaint to add this incident would be futile as it would have no impact on the viability of her claims.  *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied.").

The Court also finds that granting leave to amend at this point would cause undue prejudice to the Hospital Defendants, who have been embroiled in litigation initiated by Plaintiff for over ten years.  Indeed, this latest complaint appears designed to relitigate the legality of the mandatory disrobement policy, an issue on which the Court already ruled in *Smith I*.  Moreover, to this day, Plaintiff continues to attempt to prolong the litigation in *Smith I*.  In her answer to the Hospital Defendants' motion to dismiss, Plaintiff claims that her appeal in *Smith I* "remains subject to reinstatement" (Doc. No. 51 at 24), despite the fact that the Supreme Court has already denied her petition for writ of *certiorari* after the Second Circuit dismissed her appeal.  *See Smith v. N.Y. Presbyterian Hosp.*, 136 S.Ct. 1528 (Mem.) (Apr. 4, 2016).  In light of Plaintiff's determination to continue to litigate claims that several courts, including the Supreme Court, have already rejected,

the Court concludes that granting leave to amend in this case would only cause further prejudice to Defendants. *See In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984) (noting that a district court has "the power and the obligation to protect the public and the efficient administration of justice from [a vexatious litigant's] litigious propensities").   Accordingly, the Court denies Plaintiff leave to amend her complaint.

IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT the City and the Hospital Defendants' motions to dismiss Plaintiff's complaint with prejudice are granted.  IT IS FURTHER ORDERED THAT Plaintiff's claims against Dr. Sharon Hird are dismissed with prejudice.  IT IS FURTHER ORDERED THAT leave to amend the complaint is denied.  The Clerk of the Court is respectfully directed to terminate the motions pending at docket numbers 27 and 31 and to close this case.  The Clerk of the Court is also respectfully directed to mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated:      September 1, 2016
            New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9.1.16